IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HISCOX INSURANCE COMPANY, INC., <br> Plaintiff, | CIVIL ACTION |
| v. | |
| MRB LAWN SERVICES, also known as "MRB LAWN SERVICE," and SUNBELT RENTALS, INC., <br> Defendants. | NO.  22-2827 |

## MEMORANDUM

**Hodge, J.**                                                                 **September 14, 2023**

This is an insurance coverage dispute brought by insurer, Hiscox Insurance Company, Inc. ("Hiscox"), seeking a declaratory judgment that it owes no duty to defend Sunbelt Rentals, Inc. ("Sunbelt") and MRB Lawn Services, LLC ("MRB") in a pending tort action or to indemnify Sunbelt and MRB, if they are found liable in that lawsuit.  The underlying case, *Madonna et al. v. Sunbelt Rentals, Inc. et al.*, No. 211200511, in the Court of Common Pleas in Philadelphia County, Pennsylvania, involves claims brought by a father, Brian James Madonna, on behalf of his son, Austin Madonna, who died in a motorcycle collision with a boom lift, owned by Sunbelt, and operated by MRB.  (ECF No. 24-1.)  Presently before the Court is MRB's and Sunbelt's Motion to Dismiss the First Amended Complaint (ECF No. 25 & 26).[1]  In this action, the parties dispute whether the accident "arises out of [MRB's]. . .ongoing operation of tree removal services," because if it did, according to Hiscox, insurance coverage is excluded.

---

[1]  Defendants have only moved to dismiss Hiscox's claim seeking declaratory judgment in Count I, and not Hiscox's claim seeking rescission of the insurance contract in Count II of the First Amended Complaint.  Rescission is an equitable remedy whose purpose is to return parties to their original positions before the execution of a contract.  *See Baker v. Cambridge Chase, Inc*., 725 A.2d 757, 766 (Pa. Super. Ct. 1999). In order to rescind a contract under Pennsylvania law, an insurer must demonstrate that (1) the insured made a false representation, (2) the insured knew the representation was false or made the representation in bad faith, and (3) the representation was material to the risk being insured.  *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 129 (3d Cir. 2005).  Since Defendants do not move to dismiss Hiscox's rescission claim, the Court does not address its merits at this time.

(ECF No. 24-4 at 37, 50; ECF No. 28 at 4.)   Hiscox's position is that "factual statements made by its insured, MRB, clearly confine the underlying claims to a recovery to which the policy does not cover because the underlying plaintiff's injury was arising out of MRB's ongoing operation of tree removal."  (ECF No. 28 at 4.)  The policy excludes coverage for several enumerated services listed in an endorsement, one of which is for "tree removal." (ECF No. 24-4 at 50.)  Since the collision happened while MRB's owner was driving the boom lift between jobsites where tree removal services were being performed, Hiscox believes coverage is excluded utilizing a broad interpretation of the policy's "tree removal" exclusion, as discussed more fully herein.  (*Id*.)  MRB and Sunbelt, in contrast, contend that the "tree removal" exclusion does not apply because: (1) the accident occurred on the roadway while traveling to different jobsites where tree removal services had been completed; (2) the death of the motorcycle driver was not caused by and had no connection to the removal of any tree; and (3) the complaint in the underlying lawsuit makes no mention of "tree removal" services.

      The Court finds that the "tree removal" exclusion does not apply to Hiscox's duty to defend MRB and Sunbelt in the underlying litigation.  In particular, the "tree removal" exclusion does not encompass bodily injury sustained in a collision occurring on a roadway between jobsites where trees were not being removed, even if tree removal services occurred at nearby properties earlier in the day of the accident.  The Court, therefore, grants Defendants' Motion to Dismiss as to Hiscox's claim seeking a declaration that it owes no duty to defend MRB and Sunbelt.  Hiscox's claim that it has no duty to indemnify, however, is not ripe for disposition since there has been no finding of liability in the underlying litigation at this time.  Thus, dismissal of the duty to indemnify claim is also appropriate but *without prejudice*.

I. BACKGROUND

On December 12, 2021, Brian James Madonna – individually and as Administrator of the Estate of his son Austin Madonna – brought negligence, wrongful death, and survival action claims against Sunbelt and MRB in the Philadelphia Court of Common Pleas, *Madonna et al. v. Sunbelt et al.*, Case No. 211200511.  As alleged in this complaint, on September 28, 2020, Austin Madonna collided, while riding a motorcycle, with a boom lift owned by Sunbelt and rented to MRB.  (ECF No. 24 at 2-3; ECF No. 24-1 at 3.)   The accident occurred at approximately 7:47 p.m. that day while Austin Madonna was "traveling north on Old Wilmington Road" and the boom lift was "located in the roadway in the northbound lane at or near 814 Old Wilmington Road, Sadsburyville, PA."  (ECF No. 24-1 at 5.)  The boom lift was "in the roadway" after MRB had "completed its work" and was "obstructing the Old Wilmington Road northbound lane" without "proper warning signs and/or barricades in the area around the subject lift." (*Id.*)  Austin Madonna, who "was too late. . .to stop his motorcycle safely" attempted to avoid the crash by moving the motorcycle to "its side" but instead "skidded towards" and slammed his head into the boom lift.  (*Id.* at 6.)  After spending six days in the hospital, Austin Madonna died on October 4, 2020 from the injuries he sustained in this accident.  (ECF No. 24-1 at 6.)   On July 20, 2020, Hiscox filed a Complaint in this Court, which it amended on March 16, 2023.  (ECF 1 & 24.)  Hiscox seeks declaratory judgment that an insurance policy it issued to MRB, for policy period May 3, 2020 to May 3, 2021, excluded coverage for the accident, and thus, it has no duty to defend and indemnify Sunbelt and MRB for the underlying action. (*Id.*)   In the First Amended Complaint, Hiscox also brings a claim to rescind this policy because, according to it, "at no time prior to the accident on September 28, 2020, was Hiscox informed that MRB conducted tree removal as part of its business."  (ECF No. 24 at 6.)

While "'bodily injury'. . .in the performance of. . .ongoing operations" is covered by the insurance policy at issue, there is an exclusion for "[t]ree removal" services.  (ECF No. 1-4 at 37,

50.)  In particular, under a page titled "COMMERCIAL GENERAL LIABILITY COVERAGE FORM" the policy provides:

> "We will pay those sums that the insured be-comes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this in-surance does not apply." [sic]

(ECF No. 24-4 at 14.)  An endorsement page which "modifies insurance provided under" the "COMMERCIAL GENERAL LIABILITY COVERAGE PART" provides that:

> "[t]his insurance does not apply to 'bodily injury' or 'property damage' arising out of the ongoing opera-tions described in the Schedule of this endorsement, regardless of whether such operations are conduct-ed by you or on your behalf or whether the opera-tions are conducted for yourself or for others.  Unless a 'location' is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific 'location' is designated in the Schedule of this en-dorsement, this exclusion applies only to the de-scribed ongoing operations conducted at that 'loca-tion'.  For the purpose of this endorsement, 'location' means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad." [sic]

(*Id.* at 50.)  The "Schedule," under the heading "Description of Designated Ongoing Operation(s)" lists "[s]ervices or work on any projects involving the following materials or infrastructure" with the below graph appearing thereunder:

| | |
|---|---|
| Airports | Foundation, sheeting or retaining walls |
| Amusement rides, pools or playgrounds | Hazardous material or waste removal |
| Asbestos, lead, or mold evaluation or abatement | Hydraulic fracturing, hydrofracturing, or fracking |
| Automotive glass installation and repair | Landfills |
| Blasting or demolition | Liquefied petroleum gas (LPG) heating and air conditioning installation and repair |
| Bridges, dams, harbors, mines, piers or tunnels | Oil, gas or wells |
| Crane operation | Process piping |
| Emergency systems | Roofing |
| Exterior carpentry work | Scaffolding operation |
| Exterior electrical work | Tree removal |
| Exterior painting | Underground storage tanks or utilities |
| Exterior tile, stone, marble, mosaic, or terrazzo work | Window cleaning above 15 feet |
| Fire suppression | Any other similarly hazardous projects or materials |

4

(*Id.*)  According to the operative First Amended Complaint, "Hiscox is affording MRB and Sunbelt a defense in the Underlying Lawsuit under a full reservation of rights" meaning that it has filed this action so that it can terminate its defense of MRB and Sunbelt in the underlying case.  (ECF No. 24 at 3.)  The reason Hiscox states in its First Amended Complaint that it has no duty to defend or indemnify MRB and Sunbelt is because of statements allegedly made by Matthew Burkett, the owner of MRB and operator of the boom lift in question, on at least two occasions indicating that on the day of the accident, he had gone to two different properties located along the road where the collision occurred to remove trees.  (ECF No. 24-3 at 3.)  The evidence it cites and attaches to its First Amended Complaint includes Mr. Burkett's deposition testimony on April 26, 2021, and a handwritten statement purporting to be signed by him on October 12, 2020.[2]  (ECF No. 24-2 & 24-3.)  In this deposition testimony, Mr. Burkett states he "was contacted by a homeowner. . . to take down a large pin [sic] tree" which he was doing "there for a couple days" when another "homeowner approached. . .[him] down the street."  (ECF No. 24-3 at 3.)  One of the houses was at 827 Old Wilmington Road, and the other was at 814 Old Wilmington Road.  (*Id.*)  When Mr. Burkett "finished up. . . until noon" at the first house at 814 Old Wilmington Road, he drove the

---

[2]  Hiscox seeks to bring in this evidence even though it is extrinsic to the complaint in the underlying action, which it has attached to the First Amended Complaint and incorporated by reference into its pleading.  Under Pennsylvania law, "[t]o determine whether a claim potentially falls within the scope of a policy, [the Court] compares 'the four corners of the insurance contract to the four corners of the complaint.'" *State Auto. Mut. Ins. Co. v. Lucchesi*, 563 F. App'x 186, 189 (3d Cir. 2014) (quoting *Jerry's Sport Center, Inc.*, 2 A.3d 526, 541 (Pa. 2010).  Normally, the court does not look "outside the allegations of the underlying complaint or consider extrinsic evidence." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016) (citing *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006).  Nonetheless, Hiscox argues that Mr. Burkett's deposition testimony and written statement should be considered, citing case law it believes supports consideration of this evidence. *Citing Commercial Union Ins. Co. v. Pittsburgh Corning Corp.*, 789 F.2d 214, 218 (3d Cir.1986) (holding that pre-amendment insurance policies do not oblige the insurer to continue defending actions against its insured after its duty to indemnify has terminated due to payment of judgments or settlements that met the policy limits.); *State Farm Fire & Cas. Co. v. Cooper*, Civ. No. 00-5538, 2001 U.S. Dist. LEXIS 17050 at * 13 (holding the court may consider "conclusive evidence" of a guilty plea to aggravated assault which led to bodily injuries when determining whether a policy exclusion for "intended harm" applied).  The Court need not decide whether this extrinsic evidence may be considered, because regardless of whether the Court considers it or not, for the reasons discussed below, the "tree removal" exclusion does not apply.  For this reason, the Court discusses this extrinsic evidence without holding whether it may be brought into this specific case.

boom lift to the neighbor's house at 827 Old Wilmington Road, which was down the road. (*Id.* at 6.) He then made a left out of the neighbor's house at 827 Old Wilmington Road and "after we finished up" he "crossed the double yellow line" to return to 814 Old Wilmington Road where the boom lift was supposed to be picked up by Sunbelt the next day. (*Id.* at 8, 14.) As he was turning on the road between these two houses to return to the driveway of 814 Old Wilmington Road, he collided with a motorcycle who hit the boom lift's basket in the middle of the lane. (*Id.* at 7, 9-19.) Both Mr. Burkett's statements and the underlying complaint indicate that the accident occurred in the "roadway" – not at the properties where MRB had performed services – and after it "completed its work" or "finished up." (ECF No. 24-1 at 5; ECF No. 24-3 at 8.)

## II.  STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although a court must accept the factual allegations in a complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. In evaluating a motion to dismiss, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### III.  DISCUSSION

#### a.  **Duty to Defend**

Hiscox's position is that it has no duty to defend or indemnify MRB and Sunbelt for a tort action involving a deadly motorcycle collision with an MRB driven boom lift because of the insurance policy's "tree removal" exclusion. Hiscox does not contend that Austin Madonna's death was caused by injuries he sustained from a tree or its removal. They cannot make this claim, because according to the underlying complaint, and the evidence Hiscox asks this Court to consider, Austin Madonna's death had no connection to the removal of any tree. Indeed, at the time of the collision, MRB was returning the boom lift to its original drop-off location, so it could be picked up by its owner, Sunbelt. Austin Madonna was not on any of the properties where any "tree removal" services had been performed. At the time of the fatal collision, he was a member of the traveling public on a roadway whose death was allegedly caused by MRB's negligence in driving the boom lift and/or failure to properly warn of the boom lift's location.

Yet, according to Hiscox, this information, which it does not dispute, is irrelevant for purposes of determining whether the policy's "tree removal" exclusion applies. Hiscox's position is that so long as MRB performed "tree removal" services *that day* – which Hiscox states Mr. Burkett's testimony establishes – coverage is excluded. The Court disagrees.

Under Pennsylvania law, courts interpreting insurance policies "are guided by the polestar principle that insurance policies are contracts between an insurer and a policyholder." *Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (Pa. 2020). The Court thus "appl[ies] traditional principles of contract interpretation in ascertaining the meaning of the terms used therein." *Id*. If the policy terms are clear and unambiguous, the Court gives effect to the plain and ordinary meaning of those terms. *Id*. If, however, an ambiguity is identified in the policy, the Court must construe it in favor of the policyholder. *Id*. Insurance provisions are considered ambiguous "if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Id*. (quoting *Madison Constr. Co. v. Harleysville Mut. Ins.*, 735 A.2d 100, 106 (Pa. 1999)). Further, while an insured has the burden of establishing coverage under an insurance policy, if "the dispute involves an exclusion in the insurance policy. . . 'the burden is on the insurer to defend by showing that the loss falls within a specific policy exclusion.'" *United Nat'l Ins. Co. v. Indian Harbor Ins. Co.*, 160 F. Supp. 3d 828, 839 (E.D. Pa. 2016) (quoting *Wexler Knitting Mills v. Atl. Mut. Ins. Co.*, 555 A.2d 903, 905 (Pa. 1989)); *see also Easy Corner, Inc. v. State Nat'l Ins. Co.*, 154 F. Supp. 3d 151, 154 (E.D. Pa. 2016) (citing *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206 (3d Cir. 2001)). Thus, in this case, Hiscox bears the burden of showing that the loss falls within a ***specific policy exclusion***.

The duty to defend is broader than the duty to indemnify and arises at the time the action is filed based on the potential for liability. *Erie Insurance Exchange v. Claypoole*, 673 A.2d 348, 355 (Pa. Super. 1996). "To determine whether a claim potentially falls within the scope of a

policy, [the Court] compares 'the four corners of the insurance contract to the four corners of the complaint.'" *State Auto. Mut. Ins. Co. v. Lucchesi*, 563 F. App'x 186, 189 (3d Cir. 2014) (quoting *Jerry's Sport Center, Inc.,* 2 A.3d at 541).  When determining the duty to defend, the court must take the factual allegations in the underlying lawsuit as true and liberally construe the complaint in that lawsuit "with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the insured." *Biborosch v. Transamerica Insurance Company*, 603 A.2d 1050, 1052 (Pa. Super. 1992).

To survive the Motion to Dismiss, Hiscox's First Amended Complaint must plausibly allege, based on the facts included, that: (1) a coverage exclusion applies and; (2) because the exclusion applies, it may be entitled to declaratory judgment that it has no duty to defend and no duty to indemnify.  Despite Hiscox's arguments, the "tree removal" exclusion does not plausibly provide relief to the Plaintiff.  Hiscox states in its brief in opposition to Defendants' Motion to Dismiss that the policy "does not apply to 'bodily injury' … arising out of the ongoing operations…" of "tree removal." (ECF No. 28 at 10.)  But that is not a complete recitation of the "tree removal" exclusion to the policy.  Rather, the policy contains an exclusion for "bodily injury" arising out of "Designated Ongoing Operations" which it defines to include "services or work on" a "tree removal" project.  (ECF No. 24-4 at 50.)  The addition of "services or work on," which Hiscox omits, clarifies the meaning of this exclusion.  In particular, the addition of "services or work on" indicates that the "tree removal" exclusion must be tethered to injuries causally connected to or occurring during tree removal work.

Hiscox argues that the policy's exclusions apply even where the bodily injury suffered has no connection to the type of potentially hazardous activities listed in the Schedule's identified exclusions because of the policy's "arising out of" language.  In support, Hiscox cites

case law which it alleges supports its broad interpretation. (ECF No. 28.) All of these cases, with the exception of two, are out of Circuit, district court opinions, and all are either factually distinguishable or support Defendants' position that the exclusion does not apply. *See, e.g. Philadelphia Indem. Ins. Co. v. Streb*, Inc., 487 F. Supp. 3d 174, 189 (S.D.N.Y. 2020) (under New York law, considering "undisputed" and "conclusive" evidence of a trampoline injury to conclude there was no duty to defend when the insurance policy excluded claims "arising out of the use of . . .trampoline."); *Nautilus Ins. Co. v. Jirsa Constr. Co.,* 244 F. Supp. 3d 315, 320 (W.D.N.Y. 2017) (determining under New York law that there was no duty to defend a personal injury action that occurred in New York when the policy stated it "does not apply to 'bodily injury' arising out of…[a]ll operations in. . .New York."); *Companion Prop. & Cas. Ins. Co. v. Opheim*, 92 F. Supp. 3d 539, 553 (N.D. Tex. 2015) (holding that under Texas law, the phrase "this insurance does not apply to 'bodily injury' or 'property damage' arising out of . . . [a]ny Roofing" prevents recovery for the flooding damage "if this damage is 'causally connected or related' to the 'performance of the act of covering with a roof.'"); *Liberty Mut. Fire Ins. Co. v. E.E. Cruz & Co.*, 475 F. Supp. 2d 400, 411 (S.D.N.Y. 2007) (evaluating "arising under" policy language and construing it in favor of the insured to cover claims for property damage at a construction site under New York law based on a "products-completed operations hazard" definition that included a definition of when the work was "completed"); *Selective Ins. Co. of S.C. v. Lower Providence Twp.*, Civ. No. 12-0800, 2013 WL 3213348, at *10 (E.D. Pa. June 26, 2013) (where policy included coverage for "'bodily injury' 'caused, in whole or part by' the insured's 'ongoing operations,'" it extended to a workman who was injured on a jobsite engaging in landscaping operations that were a part of the insured's business).

The singular United States Court of Appeals for the Third Circuit case Hiscox cites, *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 391 (3d Cir. 2012), in fact, supports

10

MRB's and Sunbelt's arguments that the policy provides coverage for the underlying lawsuit because Austin Madonna's death was not connected to MRB's removal of trees. In *Allstate Prop. & Cas. Ins. Co. v. Squires*, the court held that an insurance policy holder was entitled to uninsured motorist coverage for bodily injury he sustained in a motor vehicle accident caused by a box falling from an uninsured motor vehicle. *Id.* at 388. The policy at issue in *Allstate* provided that:

> "[w]e will pay damages to an insured person for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured auto. Bodily injury must be caused by accident and arise out of the ownership, maintenance, or use of an uninsured auto."

*Id.* at 389. The lower court held that the policy did not provide coverage because the "arising out of" language applied when a vehicle – and not some other object such as the box – was "the instrumentality causing. . . the [a]ccident." *Id.* at 390. The Third Circuit disagreed, inferring that the vehicle "was transporting the box as cargo." *Id.* at 393. Thus, the accident "was a direct consequence of the use of the vehicle for its intended purposes, for as is sometimes said in another context, things 'fall off the truck.'" *Id.* The Third Circuit compared the case and distinguished it from several Pennsylvania decisions including two from the Superior Court of Pennsylvania, *Lucas-Raso v. Am. Mfrs. Ins. Co.*, 657 A.2d. 1 (Pa. Super. Ct. 1995) and *Smith v. United States Automobile Ass'n*, 572 A.2d 785 (Pa. Super Ct. 1989). *Id.* In *Lucas-Raso*, the court held that an employee who stumbled on a snow-covered pothole as she was walking toward her car did not have injuries which "ar[ose] out of the maintenance or use of a motor vehicle." 657 A.2d. at 4. While the employee was "vehicle-oriented at the time of her fall" she had "offered no connection to link her fall to the use of her vehicle other than her claim that she was en route to enter it." *Id.* at 12. Similarly in *Smith*, a minor

11

who crashed while riding his bicycle after a hayride passenger threw hay at him, did not have injuries that "ar[ose] out of the ownership, maintenance or use of the uninsured motor vehicle" under the insurance policy. 572 A.2d at 787. The *Smith* court reasoned that his "injuries were not caused by the use of the vehicle, but by the intentional act of a third-party, e.g. the passenger, throwing hay." *Id.* The court noted that the passenger "could have thrown any other object. . .which might have also caused him to collide." *Id.* In *Allstate Prop. & Cas. Ins. Co. v. Squires*, the Third Circuit distinguished these cases because they involved "attenuated. . . causal connection[s]. . . between the injury and the vehicle." 667 F.3d at 394.

There is no connection to link Austin Madonna's death with any kind of tree removal services other than Hiscox's claim that MRB was en route between two properties where tree removal services were performed. This case is more akin to the object in *Smith*, hay, and the object in *Lucas,* the pothole*,* where there were "attenuated. . . causal connection[s]" that resulted in the injury or harm, versus the cargo box in *Allstate*. Based on the facts in the underlying case, there is even less of a connection between Austin Madonna's bodily injury with tree removal services than the insufficient links in *Smith* and *Lucas*. The underlying case is about MRB's alleged negligent operation of the boom lift and failure to properly warn, which is separate and apart from the completed tree removal work at the time of the collision. MRB, instead of removing trees, could have used the boom lift for a variety of other services and still collided with Austin Madonna in the road. The fact that MRB performed tree removal services at nearby properties that day is irrelevant to the causal nexus of Austin Madonna's injuries and death.

Hiscox also argues that the "tree removal" exclusion applies since tree removal services at the nearby properties were not "completed" based on the policy's definition of that term.

12

(ECF No. 28 at 11.) Hiscox believes there is a factual issue on "completion" that precludes dismissal because "[a]ny reasonable homeowner would not consider a tree removal operation to be completed if the contractor did not remove the lift used to remove the tree from his/her property." (*Id.*) However, nowhere in the Schedule with the "tree removal" exclusion does the word "complete" or "completed" appear. Indeed, the "completion" definition Hiscox cites does not even apply to the "tree removal" exclusion or any exclusion that has any relevancy to the underlying action. Furthermore, the court finds that nothing in the policy otherwise specifies that the "tree removal" exclusion applies by the mere fact that MRB engaged in this activity during a workday for injuries unrelated to that activity. This ambiguity, or lack of specificity, inures in favor of the defendants when interpreting the exclusion language contained within the agreement and determining its application in deciding the pending Motions to Dismiss.

Instead, the "completed" definition Hiscox cites appears under the definition of "products-completed operations hazard" which is a separate exclusion dealing with property damage, not bodily injuries. In particular, the Schedule where the "tree removal" provision appears provides that the "following exclusion is added to paragraph 2., Exclusions of Coverage A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Cove-rages)" [sic]. (ECF No. 24-4 at 50.) In this referenced section of the policy, in a provision titled "Damage To Your Work," coverage is excluded for "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard." (*Id.* at 18.) The term "[p]roducts-completed operations," in turn, is defined in Section V as:

> "[w]ork that has not yet been completed or abandoned. However, 'your work' will be deemed completed at the earliest of the following times: (a) When all of the work called for in your contract has been completed. (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site. (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project."

13

That is the definition Hiscox cites along with the "products-completed operations hazard" exclusion. (ECF No. 28 at 11.) The word "completed" also appears in another section in reference to when "[a] person's or organization's status as an additional insured under this endorsement ends when your operations or lease agreement for that additional insured are completed." (ECF No. 24-4 at 37.) In other words, coverage for an "additional insured" continues until the work is "completed" as defined by the policy. MRB and Sunbelt are not seeking coverage for damage to their work or property damage – they are seeking coverage for a tort lawsuit involving personal injuries. And unlike the broader coverage afforded to an "additional insured" up until their work is "completed" based on the policy's definition of that term, the narrower "tree removal" exclusion only applies when there are "services or work on" tree removal. There were no such "services or work on" tree removal at the time of Austin Madonna's collision with the MRB operated, and Sunbelt owned, boom lift. Nor were tree removal services plausibly connected to his death.

That the "tree removal" exclusion does not apply to the underlying tort action is also buttressed by additional language in the policy. In particular, the policy specifies that the Schedule's exclusions can be limited to a certain "location" which it defines as "premises involving the same or connecting lots, or premises whose connection is interrupted only by a street." (ECF No. 24-4 at 50.) This language regarding adjoining properties or premises interrupted by streets only pertains to where a '"location" is specified in the Schedule," and not where no location is listed, as is the case here. (*Id.*) If Hiscox wanted to include language indicating that coverage was excluded for bodily injuries sustained on a roadway between two different jobsites where tree removal services were performed, it could have done so. That language would have to be clear and unambiguous, but that is a hypothesis that does not need to

14

be contemplated here because that language does not exist in the agreement.  Thus, the policy's language indicates that the "tree removal" exclusion does not apply to bodily injuries that were not causally connected to tree removal work and that were sustained in a location where no tree removal services were performed.[3]

The complaint in the underlying lawsuit makes no mention of an accident occurring during a tree being removed.  And both parties agree, that MRB was not removing a tree when the accident occurred on a roadway between two properties. The only disagreement is whether the "tree removal" exclusion applies in this scenario.  As the insurer, Hiscox bears the burden of proving that the policy contains an exclusion for bodily injuries sustained on a roadway between jobsites where the injuries were not connected to an activity excluded in the policy.  It has not done so. Nor can it because the language of the policy says otherwise. The policy contains an exclusion for "services or work on" a "tree removal" project, but if this exclusion (or another exclusion does not apply) it provides coverage for "'bodily injury' arising out of ongoing operations." (ECF No. 24-4 at 50.)  Since there is no plausible connection between the policy's "tree removal" exclusion and the underlying lawsuit, the Court dismisses Hiscox's declaratory judgment claim that it has no duty to defend MRB and Sunbelt.

---

[3]  If the Court adopts Hiscox's position, coverage could be excluded under the policy so long as MRB performed one of the numerous excluded activities identified in the policy in a given day on unrelated jobsites.  And since the policy also contains an exclusion for "[a]ny other similarly hazardous projects or materials," Hiscox could also claim that it does not have to provide coverage if MRB engages in any project or uses materials Hiscox deems "similarly hazardous" that day.  (ECF No. 24-4 at 50.)  Such an interpretation could render the policy's duty to defend provisions illusory, which would conflict with this Court's obligation to interpret ambiguous language in an insurance policy in favor of the insured.  *See, e.g. 401 Fourth St., Inc. v. Investors Ins. Group*, 879 A.2d 166, 174 n.3 (Pa. 2005) (holding that coverage would be rendered illusory and contrary to the intent of the parties if an exclusion was interpreted to negate a coverage provision).

b. **Duty to Indemnify**

Hiscox also seeks a declaration that it owes no duty to indemnify MRB and Sunbelt for potential future damages if Defendants are found liable in the underlying action. This Court finds that this issue is not ripe for review and will not be unless judgment is entered in the underlying state court tort action. Several courts within the Third Circuit have reiterated "that declaratory judgments concerning an insurer's duty to indemnify are not ripe before the insured has been held liable in the underlying action." *Joseph Oliver Constr., LLC v. Utica First Ins. Co.*, Civ. No. 19-4352-KSM, 2020 WL 3791564, at *6 (E.D. Pa. July 7, 2020); *see also Republic Servs. of Pennsylvania, LLC v. Caribbean Operators*, *LLC*, 301 F. Supp. 3d 468, 474 (E.D. Pa. 2018) ("The question of whether an insurer has a duty to indemnify is not ripe until there is an actual need for indemnification, that is, until liability has been determined in the underlying action."); *Sabia Landscaping v. Merchants Mut. Ins. Co.*, Civ. No. 13-3820, 2013 WL 6022129, at *4 (E.D. Pa. Nov. 6, 2013) ("Thus, 'a court entertaining a declaratory judgment action in an insurance coverage case should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action.'") (quoting *TDY Indus., Inc. v. Nat'l Freight Transp., Inc.*, Civ. No. 07-984, 2009 WL 691947, at *11 (W.D. Pa. Mar. 12, 2009)).

Relatedly, the Third Circuit instructs that, "the most important factors in determining whether a case is ripe are 'the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment.'" *Lewis v. Alexander*, 685 F.3d 325, 341 (3d Cir. 2012) (quoting *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990)). In analyzing the applicability of the factor concerning "the adversity of the interest of the parties," Judge Steward Dalzell for the United States District Court for the Eastern District of Pennsylvania noted "we need only highlight how unanswerable any determination of

adversity among the parties is: [the plaintiff] is adverse to [the defendant] in the action before us, but it is impossible to say whether it will remain so because the underlying state action has yet to determine whether [the defendant] will liable for the fire damage and loss." *Knightbrook Ins. Co. v. DNA Ambulance, Inc.*, Civ. No. CV 13-2961, 2013 WL 12145016, at *6 (E.D. Pa. Oct. 2, 2013).  Similarly, it is impossible to say whether Hiscox, MRB and Sunbelt will remain adverse because the underlying action has yet to determine whether MRB and Sunbelt will be held liable for Austin Madonna's personal injuries.  Taken together, this persuasive authority compels this Court to forgo declaring the indemnity obligations of Hiscox.  If and when the liability for Austin Madonna's injuries is adjudicated and determined, then a determination as to the duty to indemnify will be ripe for review by this Court.

## IV. CONCLUSION

For the reasons discussed above, the Court will grant Defendants' Motion to Dismiss. An appropriate Order will follow.

BY THE COURT:

/s/ Hon. Kelley B. Hodge

**HODGE, KELLEY B., J.**